# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| BARRY FRISON, | ) | |
|     Petitioner, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 12-00158-KD-N |
| | ) | |
| JAMES REYNOLDS, | ) | |
|     Respondent. | ) | |

## REPORT AND RECOMMENDATION

Petitioner Barry Frison ("Frison"), a former Alabama prisoner proceeding *pro se*, has filed an amended Petition for Writ of Habeas Corpus by a Person in State Custody under 28 U.S.C. § 2254 (Doc. 7) (the "Amended Petition") and supporting brief (Doc. 11).[1]  The Respondent has timely filed an Answer (Doc. 16) to the

---

[1]  Frison filed his initial habeas corpus petition in the United States District Court for the Middle District of Alabama, which subsequently transferred the petition to this Court. (*See generally* Doc. 5). Upon transfer, Frison was ordered to file a new habeas petition on this Court's forms and was informed: "Petitioner's new petition will supersede his original petition; therefore, Petitioner shall not rely upon his original petition." (Doc. 6 at 1). Frison timely complied with that order, resulting in the instant operative habeas petition (Docs. 7, 11). Accordingly, the claims and issues in Frison's initial habeas petition (Doc. 5 at 3-18) have not been considered in this Report and Recommendation.

Both Frison's initial habeas petition and his operative habeas petition were sent from the Loxley Work Release Center (*see* Doc. 5 at 18; Doc. 7 at 14), a facility of the Alabama Department of Corrections where Respondent James Reynolds is the warden (*see* http://www.doc.state.al.us/facility.aspx?loc=3 (last visited Oct. 21, 2014)). However, Frison's change-of-address notice (Doc. 18) docketed May 6, 2013, as well as a search of the Alabama Department of Corrections's online prisoner locator (http://www.doc.state.al.us/InmateSearch.aspx (last visited Oct. 21, 2014)), indicates that Frison is no longer incarcerated with the Alabama Department of Corrections. Nevertheless, this does not render Frison's petition moot. *See Jamerson v. Sec'y for Dep't of Corr.*, 410 F.3d 682, 688 (11th Cir. 2005) ("Section 2254, by its literal terms, applies to persons 'in custody,' but the Supreme Court has held that section 2254(a) is satisfied so long as the petitioner is in custody when the petition is filed. *Maleng v. Cook,* 490 U.S. 488, 490-91, 109 S. Ct. 1923, 1925, 104 L. Ed. 2d 540 (1989) (per curiam). Completion of a criminal sentence does not render a petition for habeas relief moot, because the ongoing collateral consequences of a wrongful conviction, such as the possible enhancement of a later criminal sentence on the basis of the earlier wrongful conviction, satisfy the case-or-

Amended Petition, and Frison has filed a reply (Doc. 17) to the Answer. The Amended Petition has been taken under submission and is ripe for adjudication.

This matter has been referred to the undersigned United States Magistrate Judge for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts, and SD ALA LR 72.2(c)(4). Upon consideration, and for the reasons stated herein, it is **RECOMMENDED** that Frison's Amended Petition (Doc. 7) be **DENIED** and this action **DISMISSED with prejudice**.[2] It is further **RECOMMENDED** that Frison be found not entitled either to a Certificate of Appealability or to proceed *in forma pauperis* on appeal.

## I.    Applicable Background

On December 16, 2009, a grand jury of the Circuit Court of Dallas County, Alabama, returned a three-count indictment against Frison, with Count 1 charging the offense of trafficking in cocaine in violation of Ala. Code § 13A-12-231(2)(a) and Counts 2 and 3 each charging an offense of unlawful distribution of a controlled substance in violation of Ala. Code § 13A-12-211. (Doc. 16-1 at 23-24 [Indictment]). On February 17, 2010, in Dallas County Circuit Court Case #CC-09-0335, Frison entered a plea of not guilty to the charges. (*Id.* at 25 [Plea of Not Guilty and Waiver

---

controversy jurisdictional requirement of Article III of the Constitution. *Spencer v. Kemna,* 523 U.S. 1, 7-8, 118 S. Ct. 978, 983, 140 L. Ed. 2d 43 (1998). The unconditional discharge of Jamerson's sentence, therefore, does not moot this appeal."). Moreover, by updating the Court regarding his release, Frison appears to indicate he is still interested in pursuing this action.

[2] The undersigned finds that an evidentiary hearing under 28 U.S.C. § 2254(e)(2) and Rule 8 of the Federal Rules Governing Section 2254 Cases in the United States District Courts is not needed in order to adequately dispose of the Amended Petition.

of Arraignment]).  On March 19, 2010, attorney Angela Starr ("Starr") entered her appearance as counsel of record for Frison in the case.  (*Id.* at 28 [Notice of Appearance]).

On December 7, 2010, Frison pled guilty to Counts 2 and 3 of the indictment, each charging an offense of unlawful distribution of a controlled substance in violation of Ala. Code § 13A-12-211, and was sentenced to concurrent terms of fifteen years of imprisonment, split to serve thirty months of imprisonment followed by five years of supervised probation.[3]  (Doc. 16-1 at 40  [Plea Agreement], 42-43 [Explanation of Rights & Plea of Guilty], 44-45 [Sentencing Order]).  During his guilty plea proceedings, Frison made an oral motion to suppress or in the alternative dismiss Counts 2 and 3 of the indictment based on alleged invalidity of the underlying search warrants, which the circuit court denied, noting that Frison "reserved the right to Appeal the denial of" the oral motion.[4]  (*Id.* at 41 [Order for Consolidation].  *See also id.* at 81 [Trans. of Guilty Plea], 143-146 [Trans. on Motion to Suppress]).

On January 6, 2011, Frison, still represented by Starr, filed a motion under Ala. R. Crim. P. 14.4(e) to withdraw his guilty plea.  (*Id.* at 52-54).  An amended

---

[3] Because Frison challenges a conviction and sentence handed down in Dallas County, which is encompassed by this judicial district, and because he was incarcerated at the Loxley Work Release Center, which is also located within this judicial district, at the time he initiated this habeas action, this Court has jurisdiction to entertain Frison's habeas petition.  *See* 28 U.S.C. § 2241(d).

[4] "[W]hen state law permits a defendant to plead guilty without forfeiting his right to judicial review of specified constitutional issues, the defendant is not foreclosed from pursuing those constitutional claims in a federal habeas corpus proceeding."  *Lefkowitz v. Newsome*, 420 U.S. 283, 293 (1975).

motion to withdraw guilty plea was filed on January 12, 2011. (*Id.* 58-60). This motion contained the same representations as the first but added a notarized verification by Starr. (*Id.*). The motions claimed, *inter alia*, that the district attorney's office had committed a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose the identity of a confidential informant who participated in drug buys that were the basis of the charges against Frison.

Per the representations in the motions to withdraw his guilty plea, Frison's criminal case had come for trial on December 7, 2010. Frison's counsel purportedly learned of the alleged *Brady* violation after voir dire had been conducted and requested a continuance, which was denied.[5] Counsel then made an "interim motion to suppress the trafficking charge based on invalid arrest warrants for unlawful distribution[,]" which was also denied. Frison was then purportedly "advised that he would go to jail on December 7, 2010 if he did not take the State's plea." While counsel advised the circuit court that Frison desired to reserve certain issues prior to the plea, Frison purportedly "was forced by the trial court judge to enter his plea before he could reserve his issues...[A]lthough a suppression hearing was held after the plea, for the sake of reserving issues, forcing [Frison] to plea before the suppression hearing clearly indicated that the Court was not going to consider his motion to suppress..." (Doc. 16-1 at 52-54, 58-60).

The circuit court never ruled on Frison's motions to withdraw his guilty plea; thus, the motions were deemed denied by operation of Alabama law after sixty

---

[5] On appeal in state court, however, Frison claimed that "[t]rial counsel...learned of the *Brady* violation a few days before trial through her own investigation..." (Doc. 16-2 at 10).

days.[6]  (*See* Doc. 16-5 at 5 n.1).  The circuit court appointed new counsel, Blanchard

L. McLeod, Jr., to represent Frison on appeal, and Frison filed a notice of appeal on

January 13, 2011 (Doc. 16-1 at 64-65).  In his appellate brief to the Alabama Court

of Criminal Appeals, McLeod stated only one issue: "Whether or not the pleadings

in this instant case were such as to be clear and specific statements upon which

relief was sought so as to be meritorious on its face such as to at least warrant a

hearing on the motion to withdraw the guilty plea."  (Doc. 16-2 at 8).  The thrust of

the issue was that Frison had made sufficiently specific representations of a *Brady*

violation in his motions to withdraw his guilty plea to warrant a hearing on the

issue by the circuit court.  (*See generally* Doc. 16-2).  McLeod expressly stated that

he was "NOT arguing that Frison is entitled to have his guilty plea withdrawn[,]"

only that Frison "is entitled to a hearing on the merits to establish whether there

was or was not a manifest injustice in the acceptance of [his] guilty plea."  (*Id.* at 20.

*See also id.* at 20-21 ("This brief does not directly address the ultimate issue of

whether or not Frison's relief sought should be granted.  Rather, the ultimate issue

as presented in this case was whether or not Frison was entitled to a hearing on his

motion to withdraw his guilty plea.").  Nevertheless, in closing, McLeod argued that

the motion to withdraw Frison's guilty plea "was meritorious on its face by clear

and convincing undisputed facts upon which the relief sought should be granted"

---

[6] *See Waters v. State*, No. CR-12-0971, 2013 WL 6703487, at *4 & n.4 (Ala. Crim. App. Dec. 20, 2013) ("Since the early 1990s, decisions of this Court and the Alabama Supreme Court have held that a motion to withdraw a guilty plea is the *functional equivalent* of a motion for a new trial under Rule 24, Ala. R. Crim. P.[] *See, e.g., Wallace v. State,* 701 So. 2d 829, 830 (Ala. 1997) (citing *Wilson v. State,* 659 So. 2d 152 (Ala. Crim. App. 1994), and *Rose v. State,* 598 So. 2d 1040 (Ala. Crim. App. 1992))... As such, a motion to withdraw a guilty plea is denied by operation of law after 60 days pursuant to Rule 24.4, Ala. R. Crim. P.").

and stated that Frison's case "should be remanded to the trial court for an evidentiary hearing on Frison's motion to withdraw his guilty plea. Or in the alternative, since nothing was disputed, [the] Court should grant the motion to withdraw Frison's guilty plea and remand the case to the trial [sic] to reinstate this case to the trial docket." (*Id.* at 21).

McLeod also attached a handwritten addendum to his brief that he claimed Frison "ha[d] specifically requested to be included in this brief." (*Id.* at 22). McLeod only addressed the addendum by asking that it be "incorporated as a part of the Appellant's brief on appeal." (*Id.*). Frison's handwritten addendum (*id.* at 23-26) raised various challenges to the indictment under Alabama law and the Double Jeopardy clause of the United States Constitution.

On August 12, 2011, the Alabama Court of Criminal Appeals affirmed Frison's conviction and sentence by memorandum opinion. (Doc. 16-5); *Frison v. State*, 114 So. 3d 167 (Table) (Ala. Crim. App. 2011). In so doing, the Court of Criminal Appeals did not address the claims raised in Frison's handwritten addendum, instead addressing only the claimed *Brady* violation and whether the circuit court erred in not holding a hearing on Frison's motion to withdraw his guilty plea. Frison filed an application for rehearing with the Court of Criminal Appeals, reasserting the issues raised in his initial brief and again incorporating the arguments in Frison's handwritten addendum. (Doc. 16-6). The court overruled the application without opinion on September 2, 2011. (Doc. 16-7); *Frison v. State*, 114 So. 3d 167 (Table) (Ala. Crim. App. 2011). Frison then filed a petition for a writ

of certiorari to the Alabama Supreme Court, continuing to argue his claimed *Brady* violation entitled him to at least a hearing on his motions to withdraw his guilty plea and again incorporating the arguments in Frison's handwritten addendum. (Doc. 16-8). The Alabama Supreme Court denied certiorari without opinion on October 7, 2011. (Doc. 16-9); *Ex parte Frison*, 130 So. 3d 1273 (Table) (Ala. 2011). Both the Alabama Supreme Court and the Court of Criminal Appeals issued certificates of judgment that same day. (Docs. 16-9 & 16-10).

Frison initiated this habeas action challenging the above-mentioned conviction and sentence on December 2, 2011, by filing his initial petition under 28 U.S.C. § 2254. (*See* Doc. 5 at 17).[7] Frison did not seek state-court collateral review of his conviction and sentence prior to initiating this action.

## II. **Claims**[8]

Frison's Amended Petition asserts the following grounds for relief from his conviction and sentence:

1. The prosecution committed a *Brady* violation by refusing "to disclose the name of confidential informant" against Frison. (Doc. 7 at 7).

---

[7] A *pro se* prisoner's federal habeas petition is deemed filed on the date it was delivered to prison authorities for mailing. *See, e.g. Mattern v. Sec'y for Dep't of Corr.*, 494 F.3d 1282, 1284 n.2 (11th Cir. 2007) (*per curiam*). In his initial habeas petition, Frison declared "under penalty of perjury" that his *pro se* petition "was placed in the prison mailing system on 12-02-2011…" (Doc. 5 at 17). The Respondent does not challenge the veracity of this declaration and concedes that this habeas action was timely filed within the one-year limitation period for federal habeas petitions. *See* 28 U.S.C. § 2254(d)(1); (Doc. 16 at 7, ¶ 9).

[8] The undersigned abides by the directive that "courts should construe a habeas petition filed pro se more liberally than one drawn up by an attorney." *E.g.*, *Gunn v. Newsome*, 881 F.2d 949, 961 (11th Cir. 1989).

2. The state courts erred in not allowing Frison "to withdraw [his ]guilty plea and proceed to trial." (*Id.*).

3. The indictment in Frison's state criminal action was "dupicious [sic] and fail[ed] to state a claim" and was a "mere citation of statute." (Doc. 7 at 8).

## III.   Analysis

Because Frison's habeas petition was filed after April 24, 1996, it is subject to application of the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"). *E.g.*, *Pope v. Sec'y for Dep't of Corr.*, 680 F.3d 1271, 1281 (11th Cir. 2012), *cert. denied*, 133 S. Ct. 1625 (2013). "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires a state prisoner to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error beyond any possibility for fairminded disagreement. If this standard is difficult to meet—and it is—that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy." *Burt v. Titlow*, 134 S. Ct. 10, 16 (2013) (internal citations and quotations omitted).

The Eleventh Circuit has set forth the following framework for evaluating § 2254 habeas petitions under AEDPA:

> . . . [O]ur review of []Alabama courts' decisions are limited by the terms of 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996). *See* 28 U.S.C. § 2254; *Williams v. Taylor*, 529 U.S. 362, 402-03, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). Under AEDPA, we accord a presumption of correctness to a state court's factual findings. §

2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). We therefore grant habeas relief to a petitioner challenging a state court's factual findings only in those cases where the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2). *See Wiggins v. Smith*, 539 U.S. 510, 528-29, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003).

AEDPA similarly constrains our review of legal questions decided on the merits in state court. Under the statute, we cannot grant habeas relief "with respect to any claim that was adjudicated on the merits in State court proceedings" unless:

> [T]he adjudication of the claim-
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d). The Supreme Court has further explained the requirements of § 2254(d) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams*, 529 U.S. at 412-13, 120 S. Ct. 1495. When, however, a claim is properly presented to the state court, but the state court does not adjudicate it on the merits, we review *de novo. Cone v. Bell*, --- U.S. ----, 129 S. Ct. 1769, 1784, 173 L. Ed. 2d 701 (2009).

If a petitioner fails to "properly" present his claim to the state court-by exhausting his claims and complying with the applicable state procedure-prior to bringing his federal habeas claim, then AEDPA typically bars us from reviewing the claim. Exhaustion requires that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); *see* § 2254(b), (c). That is, to properly exhaust a claim, the petitioner must "fairly present[ ]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. *Castille v. Peoples*, 489 U.S. 346, 351, 109 S. Ct. 1056, 103 L. Ed. 2d 380 (1989) (quotation and emphasis omitted).

In the process of exhausting a claim, the petitioner must comply with all "independent and adequate" state procedures, or else the petitioner will have procedurally defaulted on that claim. *See Wainwright v. Sykes*, 433 U.S. 72, 86-87, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977); *Bailey v. Nagle*, 172 F.3d 1299, 1302-03; § 2254(b), (c). Where a petitioner has not "*properly* ... presented his claims to the state courts," he will have "procedurally defaulted his claims" in federal court. *O'Sullivan*, 526 U.S. at 848, 119 S. Ct. 1728. To determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision, this court has set forth the following three-part test: (1) "the last state court rendering a judgment in the case must clearly and expressly state that it is relying on state procedural rules to resolve the federal claim without reaching the merits of that claim"[; (2)] the state court's decision must rest solidly on state law grounds, and may not be "intertwined with an interpretation of federal law[;]" and (3) the state procedural rule must not be applied in an arbitrary or unprecedented fashion. *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001) . . .

*Mason v. Allen*, 605 F.3d 1114, 1118-20 (11th Cir. 2010) (per curiam) (footnote omitted). Under this framework, the undersigned will now address Frison's various grounds for relief.

## A.     Claim 3 – Defective Indictment

In his Amended Petition, Frison argues at length that, under Alabama law, the indictment against him was overly vague and insufficient to state an offense

against him. (*See* Doc. 7 at 8; Doc. 11 at 7-11). However, as the Respondent correctly argues (*see* Doc. 16 at 16), errors of state law are not reviewable in a federal habeas proceeding.[9] *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law. Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." (internal citations and quotation omitted)); *Anderson v. Sec'y for Dep't of Corr.*, 462 F.3d 1319, 1330-31 (11th Cir. 2006) (per curiam) (holding that "[a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." (quoting *McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992)); *Davis v. Jones*, 506 F.3d 1325, 1332 (11th Cir. 2007) ("We will not question the Alabama appellate court's application of state law in federal habeas corpus review." (citing *Carrizales v. Wainwright*, 699 F.2d 1053, 1055 (11th Cir. 1983)).

To the extent an issue of federal law is implicated in this claim, the Respondent argues that "Frison did not exhaust it through one complete round of appellate review in state court[,]" as "[h]e did not present this claim in the trial court, and, while he broadly alleged it in his Appellant's Brief in the Court of Criminal Appeals (as part of his <u>pro se</u> attachment), he did not reassert it at all in

---

[9] In arguing Claim 3, Frison quotes at length from both the syllabus and body of *United States v. Cotton*, 535 U.S. 625 (2002). (*See* Doc. 11 at 11-12). That case, however, applies to <u>federal</u> indictments.

his application for rehearing" and "did not specifically reference it in his petition for a writ of certiorari in the Alabama Supreme Court." (Doc. 16 at 17). The Respondent argues that Frison's "failure to present [the claim] throughout the state courts renders it unexhausted, and, because it is a nonjurisdictional claim, it would be precluded and thus not capable of obtaining relief under in an [sic] Ala.R. Crim.P. Rule 32 petition[,]" thus rendering the claim procedurally defaulted. (*Id.* at 17-18).

The undersigned agrees that Frison did not challenge the sufficiency of the indictment in the trial court[10] and that the issue was first raised in Frison's handwritten addendum attached to his opening brief to the Court of Criminal Appeals. The Court of Criminal Appeals, without explanation, did not address any argument raised in the handwritten addendum. The undersigned disagrees with the Respondent's contention that the addendum was not reasserted in Frison's application for rehearing with the Court of Criminal Appeals or referenced in his certiorari petition to the Alabama Supreme Court, as it was attached to and incorporated by reference into both documents (*see* Doc. 16-6 at 29-33; Doc. 16-8 at 10, 30-33).

Because neither of the Alabama appellate courts explained why it declined to address Frison's handwritten addendum, it is difficult to determine whether the claims raised therein are in fact procedurally defaulted and/or unexhausted. Nevertheless, "[a]n application for a writ of habeas corpus may be denied on the

---

[10] Frison's motion to suppress challenged the validity of the arrest warrants underlying some of the charges against Frison, rather than the sufficiency of the indictment itself. (*See* Doc. 16-1 at 59-60, ¶¶ 13, 19; 143-46).

merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2).

"Because the [Alabama] courts did not reach the merits of" Frison's claim regarding the sufficiency of his indictment, "federal habeas review is not subject to the deferential standard that applies under AEDPA to any claim that was adjudicated on the merits in State court proceedings. Instead, the claim is reviewed *de novo*." *Cone v. Bell*, 556 U.S. 449, 472 (2009) (citation and quotation omitted). "An accused has a constitutional right to an indictment which puts him on notice of the case the prosecution will present at trial." *Thompson v. Nagle*, 118 F.3d 1442, 1453 (11th Cir. 1997). However, "[t]he sufficiency of a state indictment is an issue on federal habeas corpus only if the indictment was so deficient that the convicting court was deprived of jurisdiction." *Heath v. Jones*, 863 F.2d 815, 821 (11th Cir. 1989) (per curiam) (citing *DeBenedictis v. Wainwright*, 674 F.2d 841, 842 (11th Cir. 1982) (per curiam) (citing *Branch v. Estelle*, 631 F.2d 1229, 1233 (5th Cir. 1980); *Meyer v. Estelle*, 621 F.2d 769, 771 (5th Cir. 1980))).

The indictment against Frison (Doc. 16-1 at 23) charged an offense under Ala. Code. § 13A-12-231(2)(a) in Count One and offenses under Ala. Code § 13A-12-211 in Counts Two and Three. Each count charged a felony drug crime, tracked the language of the applicable statute, and provided the date of the offense and the illegal controlled substance involved. In Alabama, circuit courts have exclusive original jurisdiction of all felony prosecutions, and a defective indictment does not deprive a circuit court of that jurisdiction. *Ex parte Seymour*, 946 So. 2d 536, 538-

59 (Ala. 2006). *Accord Ex parte Jenkins*, 992 So. 2d 1248, 1250 (Ala. 2007) ("In *Seymour*, we overruled a line of Alabama cases that recognized an indictment as the circuit court's source of jurisdiction in a criminal case, holding that 'a defect in the indictment could not divest the circuit court of its power to hear the case.' *Seymour,* 946 So.2d at 538. Under our holding in *Seymour,* a defect in a criminal indictment no longer deprives the trial court of jurisdiction, as it had under the common law, but instead is a nonjurisdictional error that may be waived.").[11] Thus, the circuit court clearly had jurisdiction over the criminal case against Frison, and the allegations therein gave Frison adequate notice as to the charges against him.[12] As such, the undersigned finds that Frison is due no relief as to Claim 3.

## B.    Claims 1 & 2

Read together and in conjunction with the entirety of Frison's briefing, the only claims cognizable on federal habeas review in Claims 1 and 2 are whether Frison has sufficiently demonstrated that the prosecution committed a *Brady* violation by failing to disclose the confidential informant's identity and whether his guilty plea was improperly coerced. Whether he was entitled to a hearing on his motion to withdraw his guilty plea is solely a question of Alabama law, which this Court does not review in the habeas context. *See supra.*

---

[11] *Seymour* was issued prior to the indictment being challenged in this action.

[12] Frison also makes an incoherent, one-sentence argument that the prosecutor constructively amended the indictment (*see* Doc. 11 at 12 ("The petitioner says that if his indictment alleges six elements, and each requiring proof of committing the act that the other does not and a prosecutor upon presentment at trial chooses one of the six without giving prior notice to the defendant was a constructive amendment…")), which can be rejected without discussion.

### 1.  *Brady* Violation

> A *Brady* violation occurs when the government fails to disclose evidence materially favorable to the accused. See 373 U.S., at 87, 83 S. Ct. 1194…[T]he *Brady* duty extends to impeachment evidence as well as exculpatory evidence, *United States v. Bagley,* 473 U.S. 667, 676, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985), and *Brady* suppression occurs when the government fails to turn over even evidence that is "known only to police investigators and not to the prosecutor," *Kyles*[ *v. Whitley*], 514 U.S.[ 419,] 438, 115 S. Ct. 1555[ (1995)]. See *id.,* at 437, 115 S. Ct. 1555 ("[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police"). "Such evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different,' " *Strickler v. Greene,* 527 U.S. 263, 280, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999) (quoting *Bagley, supra,* at 682, 105 S. Ct. 3375 (opinion of Blackmun, J.)), although a "showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal," *Kyles,* 514 U.S., at 434, 115 S. Ct. 1555. The reversal of a conviction is required upon a "showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.,* at 435, 115 S. Ct. 1555.

*Youngblood v. West Virginia*, 547 U.S. 867, 869-70 (2006) (per curiam).   Under

*Brady*,

> [o]nce a defendant requests the discovery of any favorable evidence material to either guilt or sentence, the prosecution's suppression of such evidence, whether in good or bad faith, violates due process. *Brady,* 373 U.S. at 87, 83 S. Ct. at 1196–97…

> To demonstrate a *Brady* violation, a defendant must show that: (1) the cumulative effect of evidence was favorable because it was exculpatory or impeaching; (2) the evidence was willfully or inadvertently suppressed by the prosecution; and (3) the evidence was material; and (4) that the failure to disclose the evidence was prejudicial. *Bradley v. Nagle*, 212 F.3d 559, 566 (11th Cir. 2000) (citation omitted). The prosecution is not required to provide its entire file to the defense, but must disclose "material" evidence. *Stephens v. Hall*, 407 F.3d 1195, 1203 (11th Cir. 2005) (citing *United States v. Bagley*, 473 U.S. 667, 675, 105 S. Ct. 3375, 3380, 87 L. Ed. 2d 481 (1985)).

*Parker v. Allen*, 565 F.3d 1258, 1277 (11th Cir. 2009). "*Brady*'s prejudice prong, also referred to as the 'materiality prong,' is met when 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " *Wright v. Sec'y, Fla. Dep't of Corr.*, 761 F.3d 1256, 1278 (11th Cir. 2014) (quoting *Kyles*, 514 U.S. at 433 (quotation marks omitted)). *See also Bagley,* 473 U.S. at 682. "[S]trictly speaking, there is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler*, 527 U.S. at 281.

Noting that, "[o]ther than Frison's unsupported allegations in his motion to withdraw his guilty plea, the record contains no evidence that the State violated *Brady* by failing to disclose to Frison certain information that Frison alleges is exculpatory[,]" the Court of Criminal Appeals upheld the denial of Frison's motion to withdraw his guilty plea, holding that the circuit court neither "abuse[d] its discretion" nor "err[ed]" "when it did not order an evidentiary hearing on Frison's motion…" (Doc. 16-5 at 7, 9). In so doing, the court also addressed the merits of Frison's *Brady* claim as follows:

> Moreover, even if the court were to accept the allegations contained in Frison's motion as true, Frison still failed to plead facts tending to prove a *Brady* violation…
>
> …
>
> Here, even if we assume that (1) the government suppressed the identity of the confidential informant used to carry out the controlled buys, and (2) that the accurate identification of the confidential

informant would have been helpful to Frison's defense, we cannot say that (3) this evidence was "material" to Frison's defense in that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. At the suppression hearing, Officer Norris testified that he accompanied the confidential informant on both occasions while the informant purchased narcotics from Frison. Officer Norris testified to facts that would have supported a conviction for unlawful distribution of a controlled substance. We can only speculate as to what the testimony of the confidential informant would have provided for the defense; however, we conclude that because of Officer Norris's testimony regarding the controlled buys, there is no "reasonable probability" that had Frison known the identity of the confidential informant, the result of the proceedings would have been different.

(*Id.* at 7-9).

Frison has failed to demonstrate that the Court of Criminal Appeals's adjudication of his *Brady* claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or…resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[13] 28 U.S.C. § 2254(d). While the

---

[13] Both the Court of Criminal Appeals (Doc. 16-5 at 8-9) and Frison, in his application for rehearing (Doc. 16-6 at 4), cited to *Belisle v. State*, 11 So. 3d 256 (Ala. Crim. App. 2007), *aff'd*, *Ex parte Belisle*, 11 So. 3d 323 (Ala. 2008), for the following statement of law:

> "In *United States v. Agurs,* 427 U.S. 97, 103–04, 96 S. Ct. 2392, 2397–98, 49 L. Ed. 2d 342 (1976), the Court stated that the degree of materiality required to overturn a conviction under *Brady [v. Maryland,* 373 U.S. 83 (1963) ], supra, varies with the circumstances of the particular cases. Where a defendant makes a request for specific *Brady* material and the government fails to disclose the materials requested, a court will reverse whenever there is reason to believe that the nondisclosure 'might have affected the outcome of the trial.' 427 U.S. at 104, 96 S. Ct. at 2398."

> *Dixon v. State,* 536 So. 2d 959, 964 (Ala. Crim. App.1988).

burden was squarely on Frison to demonstrate, *inter alia*, the materiality of the confidential informant's identity in moving to withdraw his guilty plea based on a claimed *Brady* violation, Frison has never offered anything beyond speculative, conclusory allegations that the information "was needed in order []for [Frison] to receive a fair trial" and "could have been proven to have been exculpatory." (Doc. 16-1 at 54, ¶¶ 11, 20; 60, ¶¶ 11, 20). *See United States v. Agurs*, 427 U.S. 97, 109-10 (1976) ("The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense."); *Strickler*, 527 U.S. at 289 ("Without a doubt, Stoltzfus' testimony was prejudicial in the sense that it made petitioner's conviction more likely than if she had not testified, and discrediting her testimony might have changed the outcome of the trial. []That, however, is not the standard that petitioner must satisfy in order to obtain relief. He must convince us that there is a reasonable probability that the result of the trial would have been

---

11 So. 3d at 295.

*Agurs* is no longer controlling law in that regard. "In...*United States v. Bagley*, 473 U.S. 667, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985), the [United States Supreme ]Court...abandoned the distinction between the second and third *Agurs* circumstances, *i.e.,* the 'specific-request' and 'general- or no-request' situations" and "held that regardless of request, favorable evidence is material, and constitutional error results from its suppression by the government, 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' 473 U.S., at 682, 105 S. Ct., at 3383 (opinion of Blackmun, J.); *id.,* at 685, 105 S. Ct., at 3385 (White, J., concurring in part and concurring in judgment)." *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995). Nevertheless, this did not render the Court of Criminal Appeals's *Brady* "materiality" analysis unreasonable, as the Court of Criminal Appeals ultimately applied the correct standard in concluding that "there is no 'reasonable probability' that had Frison known the identity of the confidential informant, the result of the proceeding would have been different." (Doc. 16-5 at 9).

different if the suppressed documents had been disclosed to the defense." (quotation marks omitted)).

Indeed, in his brief to the Court of Criminal Appeals, despite repeatedly asserting that a *Brady* violation had occurred, Frison admitted he was unable to actually demonstrate the materiality of the requested information. (*See* Doc. 16-2 at 18 ("The results of the [materiality] prong of the [*Brady* ]test are totally unknown. Trial counsel was not and was never given this information. So, trial counsel could never investigate the individual for bias, prejudice or a 'plea agreement' and the terms thereof for allegedly identifying Frison as the individual involved in the distribution charges."); Doc. 16-6 [Application for Rehearing] at 4-5 ("In the Frison opinion, the opinion of the court places great emphasis on the fact that Frison could not prove either the second or third prong of the *Brady* test for materiality. But, without a hearing on the merits which was denied to Frison, how could Frison's trial court counsel have had access to the material from which the second and the third prong of the *Brady* test could possibly be met?").

In admitting that he could not in fact show materiality, Frison in effect admitted he could not actually demonstrate that a *Brady* violation had occurred. Rather, the crux of his argument appears to be that it was a *Brady* violation to deny him the ability to investigate a *Brady* violation – that is, he was entitled to the informant's identity for the purposes of discovering whether the informant was in

possession of favorable evidence and, thus, whether a *Brady* violation had occurred.[14]

Frison's argument rests on the premise that *Brady* puts the burden on the prosecution to prove it is <u>not</u> violating *Brady* by requiring it to disclose any piece evidence in its possession on demand of the defendant for inspection and determination of whether it is favorable to the defendant. In practice, this would lead to prosecutors being forced to disclose any and all evidence in their possession. The Supreme Court has repeatedly rejected the contention that due process requires such broad disclosure from prosecutors. *See Agurs*, 427 U.S. 97, 109 (1976) ("If everything that might influence a jury must be disclosed, the only way a prosecutor could discharge his constitutional duty would be to allow complete discovery of his files as a matter of routine practice. []Whether or not procedural rules authorizing such broad discovery might be desirable, the Constitution surely does not demand that much."); *Bagley*, 473 U.S. at 675 ("The *Brady* rule is based on the requirement of due process. Its purpose is not to displace the adversary system as the primary means by which truth is uncovered, but to ensure that a miscarriage of justice does not occur. Thus, the prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial…" (footnotes omitted)) & n.7 ("An interpretation of *Brady* to create a broad, constitutionally required right of

---

[14] Alternatively, some of Frison's argument to the state court could be read as asserting that failure to disclose a confidential informant's identity on a defendant's request is a *Brady* violation *per se*. Frison has never cited any authority for such a proposition, and the undersigned is not aware of any United States Supreme Court holding that mandates such a conclusion.

discovery would entirely alter the character and balance of our present systems of criminal justice." (quotation omitted)); *United States v. Ruiz*, 536 U.S. 622, 628 (2002) ("The Constitution does not require the prosecutor to share all useful information with the defendant."). *Cf. Moore v. Illinois*, 408 U.S. 786, 795 (1972) ("We know of no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case.").

As the Court has explained:

> A defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the [State]'s files. See *United States v. Bagley,*...473 U.S., at 675, 105 S. Ct., at 3380; *United States v. Agurs,*...427 U.S., at 111, 96 S. Ct., at 2401. Although the eye of an advocate may be helpful to a defendant in ferreting out information, *Dennis v. United States,* 384 U.S. 855, 875, 86 S. Ct. 1840, 1851, 16 L. Ed. 2d 973 (1966), this Court has never held—even in the absence of a statute restricting disclosure—that a defendant alone may make the determination as to the materiality of the information. …Defense counsel has no constitutional right to conduct his own search of the State's files to argue relevance. See *Weatherford v. Bursey,* 429 U.S. 545, 559, 97 S. Ct. 837, 846, 51 L. Ed. 2d 30 (1977) ("There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one").

*Pennsylvania v. Ritchie*, 480 U.S. 39, 59-60 (1987).[15]

---

[15]

> Although the Due Process Clause of the Fourteenth Amendment, as interpreted by *Brady,* only mandates the disclosure of material evidence, the obligation to disclose evidence favorable to the defense may arise more broadly under a prosecutor's ethical or statutory obligations. See *Kyles,* 514 U.S., at 437, 115 S. Ct. 1555 ("[T]he rule in *Bagley* (and, hence, in *Brady*) requires less of the prosecution than the ABA Standards for Criminal Justice Prosecution Function and Defense Function 3–3.11(a) (3d ed. 1993)"). See also ABA Model Rule of Professional Conduct 3.8(d) (2008) ("The prosecutor in a criminal case shall" "make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating information known to the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal"). As [the Supreme Court]

Moreover, the circuit court appears to have given Frison at least one opportunity to learn the informant's identity. After Frison entered his guilty plea, the circuit court, for purposes of preserving the issue, held a hearing on his motion to suppress, the express basis being the prosecution's alleged *Brady* violation. There, Frison was provided an opportunity to examine Officer Norris and others involved in the criminal investigation on the record after he entered his guilty plea. (*See* Doc. 16-1 at 85-127 [Suppression Hearing Trans.]). At no time did Frison's counsel ask any testifying witness the identity of the confidential informant (*see* Doc. 16-2 at 9 [Frison's Brief to Ct. Crim. App.] ("[N]owhere in the transcript is the identity of the confidential informant…identified"), nor did she make any demand that the informant be produced for the hearing. Frison has made no attempt to explain why counsel would have been unable to do so, and his subsequent motions to withdraw his guilty plea, filed a month later, offered no new evidence or allegations in support of a *Brady* claim.

In sum, Frison has failed to show that the Alabama Court of Criminal Appeals's adjudication of his *Brady* claim was unreasonable under AEDPA.

---

ha[s] often observed, the prudent prosecutor will err on the side of transparency, resolving doubtful questions in favor of disclosure. See *Kyles,* 514 U.S., at 439, 115 S. Ct. 1555; *United States v. Bagley,* 473 U.S. 667, 711, n.4, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985) (STEVENS, J., dissenting); *United States v. Agurs,* 427 U.S. 97, 108, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976).

*Cone v. Bell*, 556 U.S. 449, 470 n.15 (2009).

Accordingly, Frison is due no relief as to any claim of a *Brady* violation stated in Claims 1 and 2 of his Amended Petition.[16]

## 2. Voluntariness of Guilty Plea

Frison also claims that his guilty plea was coerced, and thus involuntary, because the circuit court refused to grant him a continuance or consider his motion to suppress (in effect, denying it), and because he "was advised that he would go to jail if he did not plead guilty. (Doc. 11 at 14. *See also* Doc. 17 at 2). The Court of Criminal Appeals did not address this issue in its written opinion affirming Frison's conviction and sentence, nor does the Respondent address this claim here. However, the undersigned finds that Frison and his counsel sprinkled enough allegations challenging the voluntariness of his plea among their various briefs to the state courts such that it is necessary to address these contentions.

> In analyzing the constitutionality of a guilty plea, a reviewing court must determine that the plea represents "a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart,* 474 U.S. 52, 56, 106 S. Ct. 366, 369, 88 L. Ed. 2d 203 (1985)...This court has concluded that "[a] reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process: If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty,

---

[16] In his reply, Frison argues that the suppression of the confidential informant's identity violated his rights under the Confrontation Clause of the Sixth Amendment. (*See* Doc. 17 at 3). However, "[b]y entering a guilty plea, a defendant waives constitutional rights that inhere in a criminal trial, including...the right to confront one's accusers." *Florida v. Nixon*, 543 U.S. 175, 187 (2004). Frison expressly waived this right in his guilty plea colloquy. (*See* Doc. 16-1 at 81). It is true that "when state law permits a defendant to plead guilty without forfeiting his right to judicial review of specified constitutional issues, the defendant is not foreclosed from pursuing those constitutional claims in a federal habeas corpus proceeding." *See supra*, n.4 (quoting *Lefkowitz v. Newsome*, 420 U.S. 283, 293 (1975)). However, Frison, at most, conditioned his guilty plea on preserving the right to appeal his *Brady* claim. No Confrontation Clause issue was similarly preserved, and as explained *infra*, Frison has not shown his guilty plea was invalid.

without being coerced to do so, the guilty plea ... will be upheld on federal review." *Stano v. Dugger,* 921 F.2d 1125, 1141 (11th Cir.) (en banc), *cert. denied,* 502 U.S. 835, 112 S. Ct. 116, 116 L. Ed. 2d 85 (1991).

*Jones v. White*, 992 F.2d 1548, 1556-57 (11th Cir. 1993).

Frison's contention that the circuit court's denial of his motions forced him to plead guilty is meritless. First, Frison's only reason for requesting a continuance and suppression was the state's alleged *Brady* violation, which, as explained above, Frison had failed to demonstrate. Thus, he has not shown that the circuit court incorrectly ruled on either motion. Second, if Frison disagreed with the trial court's rulings, he could have proceeded to trial and then appealed those rulings had he not prevailed. *See McQueen v. Tanner*, Civil Action No. 10-3649, 2011 WL 692033, at *10 (E.D. La. Feb. 3, 2011) ("[T]o the extent that petitioner is perhaps contending that his plea was involuntary because he felt forced to plead guilty after the adverse ruling, that contention is unavailing. Instead of pleading guilty, he could simply have continued with the trial and appealed the adverse ruling if convicted."), *report and recommendation adopted*, 2011 WL 690532 (E.D. La. Feb. 18, 2011). The fact that Frison was expressly allowed to preserve certain issues for appeal further militates against a finding that Frison felt forced to plead guilty by the circuit court's rulings. *Cf. McQueen*, 2011 WL 692033, at *9-10 ("Pursuant to *State v. Crosby*, 338 So. 2d 584 (La. 1976), a Louisiana defendant is allowed appellate review of pretrial rulings if he properly reserves those rights at the time and at the entry of the guilty plea and if his plea is conditioned on that the reservation of those rights…[I]f th[e trial court's adverse] ruling had truly been a factor in the decision

to enter a plea, [the petitioner] could have entered a *Crosby* plea. The fact that he did not is an indication that the ruling was not a motivating factor.").

Of somewhat more concern is Frison's claim of threats that he would be sent to jail if he did not accept the State's plea. The record, however, does not support this claim. In the colloquy that preceded his plea of guilty, the circuit court expressly asked Frison, *inter alia*: "Have you been threatened or abused or offered any inducement or reward to get you to plead guilty?" (Doc. 16-1 at 84). Frison answered: "No." (*Id.*) When asked if she "recommend[ed] that [the circuit court] accept this plea[,]" Frison's counsel, Starr, answered: "I do, Your Honor." (*Id.*) After accepting the plea, Frison was asked if there was anything he wished to say prior to being sentenced, and he again answered "No." (*Id.*).

"[T]he representations of the defendant, his lawyer, and the prosecutor at [a guilty plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). *Accord Winthrop-Redin v. United States*, 767 F.3d 1210, 1216-17 (11th Cir. 2014). *But see Potts v. Zant*, 638 F.2d 727, 751 (5th Cir. Unit B Feb. 17 1981)[17] ("[I]n this circuit, as well as in the

---

[17] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

Supreme Court, when a s 2255 petitioner sets out **detailed** factual allegations regarding alleged circumstances which may go to the voluntariness of his plea, the petitioner is entitled to a hearing unless the motion and the files on record conclusively show the petitioner is entitled to no relief. Typically, this circuit has found some form of corroboration to a petitioner's allegations before requiring a hearing." (emphasis added) (internal citations omitted)).

Neither Frison nor Starr ever indicated on the record at the guilty plea hearing that he or she believed the guilty plea was coerced. Frison first raised his claim of coercion in his motions to withdraw his guilty plea, each of which made only a brief, one-sentence allegation that Frison had been "advised that he would to jail…if he did not" plead guilty.[18]  (Doc. 16-1 at 53, ¶ 15; 59, ¶ 15). Neither motion even alleged who made the threat.

On appeal, Frison finally identified the purported source of the threat, claiming that "[t]he trial court effectively denied [a] continuance when he advised counsel that her client could either go to trial or go to jail." (Doc. 16-2 at 7). However, in his sworn Amended Petition, Frison alters this contention, now claiming it was the "states [sic] attorney" who made this threat as a "message []from the trial judge" and citing "Exhibit A" in support. (Doc. 11 at 14). The only two, unlabeled exhibits attached to his Amended Petition being copies of the arrest warrant in his underlying criminal case and his Amended Motion to Withdraw

---

[18] It was Frison's appellate counsel, McLeod, who subsequently elevated the relatively benign "advised" to the more inflammatory "threatened." (*See, e.g.*, Doc. 16-2 at 19 ("Frison was threatened with going to jail if a continuance was granted to exercise his Fourth Amendment right to a jury trial.")).

Guilty Plea. (*Id.* at 24-28). In his reply, Frison again states only that the "trial judge" threatened "that he plea guilty or go to jail." (Doc. 17 at 2).

Frison has plainly presented only "conclusory allegations unsupported by specifics" in contending that his guilty plea was coerced by threats. The Eleventh Circuit has rejected as "implausible and conclusory" far more detailed allegations of death threats supposedly by co-conspirators that a habeas petitioner claimed induced him to plead guilty (in an action by a federal prisoner under 28 U.S.C. § 2255, where no AEDPA deference is due). *Cf. Winthrop-Redin*, 767 F.3d at 1212, 1214-15, 1217-18.

Moreover, Frison's contentions, in the face of the record, are "wholly incredible." The claim of coercion is directly contradicted by the testimony of both Frison and Starr at the guilty plea hearing, and neither made any attempt to acknowledge the contradiction and explain why their representations at the guilty plea hearing should have been disregarded. *Cf. id.* at 1216-17 ("[T]he record contains powerful evidence from Winthrop–Redin himself indicating that his guilty plea was knowing and voluntary. Winthrop–Redin initialed and signed the plea agreement, which specified that he had decided to plead knowingly and voluntarily, without threats, force, intimidation, or coercion. Winthrop–Redin then testified under oath and in detail that his plea had not been induced by threats or force leveled against him or his family. Such solemn declarations in open court carry a strong presumption of verity." (internal citation and quotation omitted)). Additionally, the fact that Frison did not raise this alleged threat until a month

after his guilty plea, and supported it only with the conclusory assertions of himself and his counsel, further weakens the credibility of the allegation. *Cf. id.* at 1217 ("The district court is entitled to discredit a defendant's newly-minted story about being threatened when that story is supported only by the defendant's conclusory statements."). Finally, the fact that Frison entered into a guilty plea that he knew would resulted in him being sent to jail anyway suggests that any fear of being sent to jail was not a true motivating factor in his doing so. (*See* Doc. 16-1 at 40 [Signed Plea Agreement indicating, *inter alia*, that Frison would "serve 30 months"]). Neither the state courts nor this Court is "required to allow a fishing-expedition based only on [Frison]'s incredible" and threadbare "allegations." *Winthrop-Redin*, 767 F.3d at 1218.

For these reasons, the undersigned finds that Frison is due no relief as to any challenge to the voluntariness of his guilty plea presented by Claims 1 and 2.

## IV.    Certificate of Appealability

The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2). "[A] COA does not require a showing that the appeal will succeed." *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003)

Where, as here, the district court "has rejected the constitutional claims on

28

the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). *See also Miller-El*, 537 U.S. at 336 ("Under the controlling standard, a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." (citations omitted and punctuation modified)).). "A prisoner seeking a COA must prove something more than the absence of frivolity or the existence of mere good faith on his or her part." *Miller-El*, 537 U.S. at 338 (quotations omitted).

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the undersigned **RECOMMENDS** that a certificate of appealability in this action be **DENIED**. 28 U.S.C. foll. § 2254, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). Frison has presented no constitutional claim for which "reasonable jurists would find [this] court's assessment…debatable or wrong." *Slack*, 529 U.S. at 484.

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by petitioner, he may bring this argument to the attention of the district judge in the objections permitted to this

report and recommendation. *See, e.g.*, *Brightwell v. Patterson*, No. CA 11-0165-WS-C, 2011 WL 1930676, at *6 (S.D. Ala. Apr. 11, 2011), *report & recommendation adopted*, 2011 WL 1930662 (S.D. Ala. May 19, 2011)[19]; *Griffin v. DeRosa*, No. 3:10cv342/RV/MD, 2010 WL 3943702, at *4 (N.D. Fla. Sep. 20, 2010) (providing for same procedure), *report & recommendation adopted sub nom. Griffin v. Butterworth*, 2010 W: 3943699 (N.D. Oct. 5, 2010).

## V.     Appeal *In Forma Pauperis*

"An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith." 28 U.S.C.A. § 1915(a)(3). A district court's finding "that an appeal would not be in good faith because no certificate of appealability had been issued . . . is not enough to explain why the appeal on the merits would not be in good faith, because the standard governing the issuance of a certificate of appealability is not the same as the standard for determining whether an appeal is in good faith. It is more demanding . . . [T]o determine that an appeal is in good faith, a court need only find that a reasonable person could suppose that the appeal has some merit." *Walker v. O'Brien*, 216 F.3d 626, 631-32 (7th Cir. 2000). *See also Weaver v. Patterson*, Civ. A. No. 11-00152-WS-N, 2012 WL 2568218, at *7 (S.D. Ala. June 19, 2012) (Nelson, M.J.), *report and recommendation adopted*, Civ. A. No. 11-00152-WS-N, 2012 WL 2568093 (S.D. Ala. July 3, 2012) (Steele, C.J.) ("An appeal may not be taken *in forma pauperis* if the trial court certifies in writing that

---

[19] It should be noted that in that proceeding, the Eleventh Circuit (Judge Hull) also denied the petitioner's motion for certificate of appealability on October 11, 2011. (*See* Doc. 14 in CA-11-0165-WS-C.)

the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); *see* Fed. R. App. P. 24(a)(3)(A); *Lee v. Clinton*, 209 F.3d 1025, 1026 (7th Cir. 2000) (concluding that 'good faith' is 'an objective concept' and that 'not taken in good faith' is 'a synonym for frivolous'); *DeSantis v. United Techs, Corp.*, 15 F. Supp. 2d 1285, 1288–89 (M.D. Fla. 1998) (stating that good faith 'must be judged by an objective, not a subjective, standard' and that an appellant 'demonstrates good faith when he seeks appellate review of any issue that is not frivolous'). An appeal filed *in forma pauperis* is frivolous if 'it appears that the Plaintiff has little to no chance of success,' meaning that the 'factual allegations are clearly baseless or that the legal theories are indisputably meritless.' *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993).''). *But see, e.g., United States v. McCray*, No. 4:07CR20-RH, 2012 WL 1155471, at *2 (N.D. Fla. Apr. 5, 2012) ("Because the defendant has not obtained—and is not entitled to—a certificate of appealability, any appeal by the defendant will not be taken in good faith. I certify under Federal Rule of Appellate Procedure 24(a) that any appeal will not be taken in good faith and that the defendant is not otherwise entitled to proceed *in forma pauperis* on appeal.").

In light of the above-stated reasoning, the undersigned **RECOMMENDS** the Court certify that any appeal by Frison in this action would be without merit and therefore not taken in good faith and, accordingly, find that Frison is not entitled to appeal *in forma pauperis.*

## VI.    Conclusion

In accordance with the above-stated reasoning, the undersigned Magistrate

Judge **RECOMMENDS** that Frison's Amended Petition (Doc. 7) be **DENIED**, that this action be **DISMISSED with prejudice**, that judgment be entered in favor of the Respondent, and that the Court find that Frison is not entitled to a certificate of appealability or to appeal *in forma pauperis*.

## VII.   Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law.   Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.   *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. L.R. 72.4.   In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.   An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 21st day of November 2014.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**